IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03392-RBJ-KLM

PHILLIP DAVID HASKETT,

      Plaintiff,

v.

GARY WOODROW FLANDERS,
DOMINICK LUNA, Colorado Springs Police Department Officer, in his individual and official capacities, and
THE COLORADO SPRINGS POLICE DEPARTMENT, a Department of the City of Colorado Springs, Colorado,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

      This matter is before the Court on the **Motion to Dismiss Amended Complaint**

[#37],[1] filed by Defendants Dominick Luna ("Luna") and the City of Colorado Springs (the

"City").[2] Plaintiff, who proceeds in this matter as a pro se litigant,[3] filed a Response [#39],

---

     [1] "[#37]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

     [2] Although Defendant Flanders has not filed a motion to dismiss based on the merits of the case, the Court examines certain claims made against him pursuant to 28 U.S.C. § 1915(e)(2), which states that, in cases where a plaintiff proceeds in forma pauperis, as Plaintiff does here, the Court shall dismiss the case at any time if it is determined that the plaintiff fails to state a claim on which relief may be granted. *See Order* [#5].

     [3] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

and Defendants filed a Reply [#42].  The Motion has been referred to the undersigned for

recommendation [#38] pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3).

The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the

applicable law, and is sufficiently advised in the premises.  For the reasons set forth below,

the Court respectfully **RECOMMENDS** that the Motion [#37] be **GRANTED**.

## I.  Summary of the Case

Plaintiff is a Texas citizen.  *Am. Compl.* [#30] ¶ 1.  Defendant Luna is a patrol officer

with the City of Colorado Springs Police Department.  *Id.* ¶ 4.  The City is Defendant Luna's

employer.  *Id.*  Defendant Gary Woodrow Flanders ("Flanders") and Plaintiff have a long

history of contentious interaction with one another.  *See, e.g., id.* ¶ 13 (describing a four-

year "convoluted District Court lawsuit with [Defendant] Flanders concerning a tract of

commercial real estate").

According to the allegations in Plaintiff's Amended Complaint [#30], on November

1, 2012, Plaintiff and Defendant Flanders were coincidentally at the same post office in

downtown Colorado Springs.  *Id.* ¶ 16.  While Plaintiff waited in line inside the building,

Defendant Flanders identified Plaintiff's vehicle, which was parked nearby, by its Texas

tags and proceeded to take multiple photographs of the interior by pressing his camera

against the window glass.  *Id.* ¶ 18.  When Plaintiff exited the post office, Defendant

Flanders rushed to within two feet of Plaintiff, his camera held chest high, taking multiple

photographs of Plaintiff.  *Id.* ¶¶ 20-21.  Defendant Flanders continued to take photographs

of Plaintiff's vehicle from all sides, which Plaintiff attempted to prevent him from doing.  *Id.*

---

In addition, a pro se litigant must follow the same procedural rules that govern other litigants.
*Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

¶ 22.  Plaintiff asserts that the 71-year-old Defendant Flanders' motives underlying this incident consisted of, first, hoping to be assaulted by Plaintiff so that Defendant Flanders could have Plaintiff arrested for elder abuse, and, second, providing a justification for a search by law enforcement of Plaintiff's vehicle so that any firearms therein could be seized. *Id.* ¶¶ 38-39. When Defendant Flanders moved away from the vehicle, Plaintiff got in and started the engine.  *Id.* ¶ 23.  As Plaintiff backed out of the parking space, he saw Defendant Flanders run down the sidewalk to two individuals who had witnessed the incident. *Id.* ¶ 24.  As Plaintiff drove away, he saw Defendant Flanders talking with them. *Id.*

Approximately ninety minutes after Plaintiff left the post office, Defendant Flanders walked into the lobby of the Colorado Springs Police Department Police Operations Center ("POC") and called 9-1-1 from his cell phone.  *Id.* ¶ 25.  Defendant Flanders told the 9-1-1 operator that, "A fellow was trying to kill me." *Id.* ¶ 26.  Defendant Luna was dispatched to meet Defendant Flanders at the POC, and Defendant Flanders told the officer that Plaintiff had threatened to "rape and kill him."  *Id.*  Defendant Flanders also admitted to Defendant Luna that he was on probation from federal prison.  *Id.* ¶ 29.  Defendant Flanders then provided Defendant Luna with a memory card holding eight photographs showing how Plaintiff and Defendant Flanders moved around Plaintiff's vehicle while Defendant Flanders snapped pictures.  *Id.* ¶ 27.  Plaintiff alleges that, during the ninety minutes before Defendant Flanders called 9-1-1, Defendant Flanders deleted the many other photographs he had taken and only kept the ones that best supported the story he was giving to Defendant Luna.  *Id.* ¶ 28.

Defendant Luna proceeded to interview the two witnesses to whom Defendant

Flanders had spoken immediately after the incident. *Id.* ¶ 29.  One of the witnesses told Defendant Luna that, although he could not actually hear what Plaintiff and Defendant Flanders were saying at the vehicle, "most of what Plaintiff said were threats on Flanders' life." *Id.*  Plaintiff asserts that these two witnesses, along with a third who was never interviewed by Defendant Luna, were later interviewed by Plaintiff's investigator, and that their statements did not corroborate Defendant Flanders' version of the events. *Id.* ¶¶ 34-37.

Defendant Luna thereafter signed an arrest warrant for Plaintiff. *Id.* ¶ 31.  He called Plaintiff's cell phone number, which he obtained from Defendant Flanders, but Plaintiff missed the call and chose not to return it. *Id.*  Plaintiff's attorney spoke with Defendant Luna the next day, and they arranged for Plaintiff to pick up a "no arrest" summons at the POC in lieu of being arrested, which Plaintiff did that same morning. *Id.* ¶ 32.  Thus, Plaintiff was not arrested in connection with this case. *Id.* ¶ 41.  Three months later, on February 6, 2013, the municipal court prosecutor moved to dismiss the charges against Plaintiff with prejudice "for lack of evidence." *Id.* ¶ 42.  The court granted the request. *Id.*

Plaintiff asserts that this incident is part of Defendant Flanders' and the Colorado Springs Police Department's long-running harassment of Plaintiff. *See, e.g.*, *id.* ¶¶ 39-40.  In connection with these events, Plaintiff asserts six causes of action: (1) defamation/libel against Defendant Flanders, (2) intentional interference with a beneficial contractual relationship against Defendant Flanders, (3) malicious prosecution against Defendants Flanders and Luna, (4) Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983 against all Defendants, (5) a conspiracy claim under 42 U.S.C. § 1985(3) against all Defendants, and (6) *respondeat superior* against the City Defendant. *Id.* ¶¶ 47-111.  In the

Response [#39], Plaintiff concedes that he has not alleged a § 1983 claim for malicious prosecution but does assert the state-law version of this claim.  Defendants Luna and the City argue that all of Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted.[4]

## II.  Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary;

---

[4] Defendants purportedly assert the Motion under Fed. R. Civ. P. 12(b)(1) as well, but they appear to make no jurisdictional argument in the Motion. *Motion* [#37] at 1, 3-4.

the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## III.  Analysis

### A.      Claims Four and Five Against Defendant Luna

Defendant Luna seeks qualified immunity on Plaintiff's claims for monetary relief against him in his individual capacity. *Motion* [#37] at 4-5. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity offers protection both from trial and the other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When a defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. One part of the

inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2103) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

### 1. Claim Four: Section 1983

Plaintiff asserts two § 1983 claims against all Defendants under the Fourth and Fourteenth Amendments.

### a. Fourth Amendment

The basis for Plaintiff's Fourth Amendment claim is not clear. Plaintiff's initial Complaint asserted Fifth and Fourteenth Amendment § 1983 claims, but in the Amended Complaint Plaintiff asserted Fourth and Fourteenth Amendment claims instead.[5] *Am. Compl.* [#30] ¶ 83. The allegations in the Amended Complaint appear to attempt to assert a claim for malicious prosecution under the Fourth Amendment. *Id.* (stating that Defendant

---

[5] The Court does not consider a Fifth Amendment claim. In the initial Complaint, Plaintiff asserted a Fifth Amendment claim. *Compl.* [#1] ¶ 71. However, Plaintiff explicitly dropped this claim from his Amended Complaint. *Am. Compl.* [#30] ¶ 83. Although the Court must construe the filings of a pro se litigant liberally, *Haines*, 404 U.S. at 520-21; *Hall*, 935 F.2d at 1110, the Court will not permit Plaintiff to resurrect this claim in his Response and thus take Defendants unaware after he explicitly removed this type of claim from the causes of action in the Amended Complaint and after Defendants filed the present Motion [#37]. *Response* [#39] at 12-13.

Luna's "decision to proceed with the prosecution was a violation of Plaintiff's Fourth Amendment right to not be prosecuted on false, uncorroborated allegations of an unreliable complainant"). Defendants argue that this claim should be dismissed. *Motion* [#37] at 9. In response to the Motion, Plaintiff conceded that he cannot maintain a § 1983 claim for malicious prosecution. *Response* [#39] at 6. However, he "contends that his allegation that Luna fabricated evidence in the form of false witness statements constitutes a sufficiently egregious misuse of the legal process to constitute an actionable violation of Plaintiff's Fourth Amendment rights." *Id.*

Plaintiff does not state under what theory his non-malicious prosecution Fourth Amendment claim proceeds. The cases to which he cites in support of his contention that he can maintain a Fourth Amendment claim in the absence of malicious prosecution are inapplicable to the facts of this case. Both *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996), and *Taylor v. Meacham*, 82 F.3d 1556 (10th Cir. 1996), involve discussion of the Fourth Amendment in connection with malicious prosecution. Neither appears to touch on a different Fourth Amendment claim that would pertain to Plaintiff's argument or the facts of this case.[6] *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (1995) (Scalia, J., concurring) (stating "I am aware of[ ] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution").

Thus, based on Plaintiff's concession that he cannot assert a Fourth Amendment § 1983 malicious prosecution claim, and in the absence of any cognizable statement of

---

[6] Plaintiff does not allege that he was arrested or otherwise detained in connection with this incident. *See Am. Compl.* [#30] ¶ 32.

another Fourth Amendment § 1983 claim, the Court finds that Defendant Luna is entitled to qualified immunity based on the absence of a constitutional violation. Accordingly, the Court **recommends** that Plaintiff's Fourth Amendment claim as to Defendant Luna in his individual capacity be **dismissed with prejudice**. *See Preece v. Cole*, No. 13-cv-03265-REB-KLM, 2014 WL 6440406, at *1 (D. Colo. Nov. 17, 2014).

### b. Fourteenth Amendment

Plaintiff also asserts an equal protection claim based on selective law enforcement. *Am. Compl.* [#30] ¶ 83. In the Response, Plaintiff states that his "own extensive history of negative encounters with CSPD forms the foundation of this allegation . . . ," stating that "the [CSPD] maintains a 'blacklist' of undesirable parties who receive special treatment designed to persuade those individuals to leave town." *Response* [#39] at 13.

The Court first notes that Plaintiff's Amended Complaint belies this construction of his Fourteenth Amendment claim. Plaintiff's detailed recitation of this claim does not allow for an interpretation that its factual basis is anything other than the alleged November 1, 2012 incident involving Defendants Luna and Flanders which apparently provoked the filing of this case. *Am. Compl.* [#30] ¶¶ 70-86. Again, the Court will not permit Plaintiff to blindside Defendants by attempting to alter the claims as alleged in the Amended Complaint.

Even if, arguendo, the Court were to construe this claim as involving the "extensive history of negative encounters with CSPD" as clearly alleged in the Amended Complaint in connection with other claims, most of the alleged events would be barred by the statute of limitations, as Defendants argue regarding Plaintiff's § 1985(3) claim. *Motion* [#37] at

12-13; *Response* [#39] at 13.  Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint.  *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).  Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose.  *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).  In Colorado, the limitation on a personal injury claim brought pursuant to § 1983 is two years.  *See* Colo. Rev. Stat. § 13–80–102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *see Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13–80–102 to a section 1983 claim). However, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).  Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Id.* at 969.  That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).  Here, Plaintiff only alleges two incidents that would be included within the statute of limitations: (1) the incident involving Defendants Luna and Flanders, as fully outlined above, and (2) a 2013 incident in which a CSPD officer told Plaintiff that private individuals who drove past Plaintiff in a car and shouted allegedly racial epithets (i.e., "yo white-cracka ass") at him could not be found because Plaintiff only obtained a three-letter partial license plate number.  *Am. Compl.* [#30] ¶ 99(h).

Based on these and other time-barred incidents, Plaintiff asserts a claim of selective law enforcement against Defendant Luna, believing that he is being treated differently and more severely than other persons. *Response* [#39] at 12-13. Plaintiff, however, explicitly disclaims asserting a class-of-one claim. *Response* [#39] at 13. He cannot clearly delineate the class to which he belongs, affirmatively stating that: "Plaintiff is unable to describe exactly the defining characteristics of this class, and it may be that its members are selected only after their first encounter with CSPD using criteria that cannot be determined exactly without a 'quisling' breaking ranks to step forward and admit the existence of the 'blacklist.'" *Id.* The closest Plaintiff appears to come to attempting to define a group is as follows: "CSPD's officers select blacklisted individuals after an initial encounter by applying criteria which may include regional origin as a person of southern states . . . , belligerent attitude, apparent intelligence or lack thereof, resistance to the officer's instructions, and most importantly, whether the person is armed, legally or otherwise." *Am. Compl.* [#30] ¶ 98. To some ambiguous extent, Plaintiff may be trying to describe a class based on his connection to Texas, for example, his Texas license plates, Texas birth, Texas residency, or perhaps even Texas accent.

"[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause . . . ." *Whren v. United States*, 517 U.S. 806, 813 (1996). To establish a claim of selective law enforcement, "[t]he plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall*, 345 F.3d at 1168. The discriminatory effect element is established by making "a credible showing that a similarly-situated individual of another race could have been, but was not, arrested . . . for the offense for which the [plaintiff] was

arrested." *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001). "[T]he discriminatory purpose element requires a showing that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the [plaintiff]." *United States v. Alcaraz–Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Marshall*, 345 F.3d at 1168).

The standard for alleging a selective enforcement claim is a demanding one. *Alcaraz–Arellano*, 441 F.3d at 1264. "Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with 'clear evidence to the contrary.'" *United States v. Hernandez–Chaparro*, 357 F. App'x 165, 166 (10th Cir. 2009) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). Police possess broad discretion in determining when to make a traffic stop or arrest. *Alcaraz–Arellano*, 441 F.3d at 1264. "Judicial interference with law-enforcement discretion might 'induce police officers to protect themselves against false accusations in ways that are counterproductive to fair and effective enforcement of the laws,' such as by directing law enforcement resources away from minority neighborhoods." *Id.* (quoting *Marshall*, 345 F.3d at 1167). "Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

Even were the Court to accept some version of Plaintiff's ambiguously-defined class, Plaintiff has simply failed to adequately allege that similarly situated individuals were treated differently. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "It is this comparative element that distinguishes the Equal Protection Clause from the Due Process

Clause." *Jennings*, 383 F.3d at 1213 (citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)).

"Traditional equal protection law deals with groups unified by the characteristic alleged to

be the root of the discrimination." *Jennings*, 383 F.3d at 1213.  In contrast, the Tenth

Circuit has emphasized that "[l]ooking only at one individual, however, there is no way to

know whether the difference in treatment was occasioned by legitimate or illegitimate

considerations without a comprehensive and largely subjective canvassing of all possible

relevant factors." *Id.* at 1213-14.  "Inevitably, the degree to which others are viewed as

similarly situated depends substantially on the facts and context of the case." *Id.* at 1214.

"Plaintiffs will have an easier time stating a claim where there are few variables in play and

the set of potentially similarly situated individuals is well-defined." *Id.*  The Tenth Circuit has

stated:

> When multiple variables are in play, however, the difference in treatment can
> be the product of a number of considerations, conscious or otherwise, many
> of them legitimate.  That is why the Supreme Court has imposed a
> substantially more "demanding" pleading burden on plaintiffs bringing claims
> of selective law enforcement." *United States v. Armstrong*, 517 U.S. 456,
> 463-64 (1995)).  Because the exercise of prosecutorial discretion implicates
> a host of variables from the relative culpability of the defendants to the
> optimal deployment of prosecutorial resources, it is correspondingly more
> difficult to bring an equal protection claim than in the classic case of
> discrimination against a suspect class.  *Id.* (describing the pleading
> requirement for selective prosecution equal protection claims as "a significant
> barrier to the litigation of insubstantial claims"); *see also  Marshall v.
> Columbia Lea Reg. Hosp.*, 345 F.3d 1157, 1167-68 (10th Cir. 2003)
> (analogizing § 1983 equal protection claims to selective enforcement claims
> in the criminal context; relying on *Armstrong* to supply substantive
> standards).  These burdens are occasioned by the multifarious nature of
> enforcement and prosecution decisions which touch on "[s]uch factors as the
> strength of the case, the prosecution's general deterrence value, the
> Government's enforcement priorities, and the case's relationship to the
> Government's overall enforcement plan[. These concerns] are not readily
> susceptible to the kind of analysis the courts are competent to undertake."
> *Armstrong*, 517 U.S. at 465, quoting *Wayte v. United States*, 470 U.S. 598,
> 607 (1985).

*Jennings*, 383 F.3d at 1214-15.

To succeed on this claim, therefore, Plaintiff must provide allegations of other similarly situated persons who were in fact treated differently. *Id.* at 1215 (citing *Armstrong*, 517 U.S. at 465-67). Nowhere in the Amended Complaint does Plaintiff do so. Plaintiff argues that "[a] general allegation that a plaintiff has received a different standard of police protection than is typically afforded citizens is sufficient to meet the requirements set out by our Supreme Court . . . ." *Response* [#39] at 13. This, however, is incorrect. *Iqbal*, 556 U.S. at 677. Further, Plaintiff's statement that "extensive discovery may be required to establish [the] very existence" of a class in support of this cause of action demonstrates the speculative nature of this claim. *Response* [#39] at 13. Because Plaintiff is unable to allege that a similarly situated individual of a different class could have been but was not prosecuted for an offense for which Plaintiff was prosecuted, *see Am. Compl.* [#30] ¶¶ 42, 83, he cannot demonstrate that discriminatory intent was a motivating factor in the decision of Defendant Luna to enforce the criminal law against him. *See James*, 257 F.3d at 1179; *Alcaraz–Arellano*, 441 F.3d at 1264. Therefore, Plaintiff's equal protection claim fails, and the Court finds that Defendant Luna is entitled to qualified immunity.

Accordingly, the Court **recommends** that Plaintiff's Fourteenth Amendment claim against Defendant Luna in his individual capacity be **dismissed with prejudice**. *See Preece*, 2014 WL 6440406, at *1.

### 2.    Claim Five: Section 1985(3) Conspiracy

The elements of a § 1985(3) conspiracy claim are: (1) a civil conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in

furtherance of conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). To meet the first element of a § 1985(3) claim and state a claim for civil conspiracy, Plaintiff "must allege specific facts showing agreement and concerted action among the defendants." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988) (emphasis added). It is not enough for Plaintiff to merely state that Defendants engaged in a conspiracy. *See id.* ("Conclusory allegations of conspiracy are insufficient."); *Sieverding v. Colo. Bar Ass'n*, No. Civ. A. 02–M–1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (holding that the plaintiffs' conclusory statements with regard to the existence of conspiracies surrounding every event on which they based their claims failed to allege specific facts that fulfilled the requirements of the elements of a claim for civil conspiracy and were "insufficient to state a claim"). In addition, 42 U.S.C. § 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971)). "The other 'class-based animus' language of this requirement has been narrowly construed." *Id.* (citing *United Bd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983). Finally, 42 U.S.C. § 1985(3) only applies to "conspiracies 'aimed at interfering with rights that are protected against private, as well as official encroachment.'" *Id.* (quoting *Scott*, 463 U.S. at 833).

The Court has construed Plaintiff's allegations liberally and in the light most favorable to him. However, among other problems, Plaintiff's Amended Complaint is completely devoid of any allegations that the alleged conspiracy was motivated by "invidiously discriminatory animus." *Id.* The Court therefore finds that Plaintiff has not sufficiently alleged facts supporting the elements necessary to establish an entitlement to

relief, and that Defendant Luna is entitled to qualified immunity on Plaintiff's claim of civil conspiracy pursuant to 42 U.S.C. § 1985. Accordingly, the Court recommends that Plaintiff's civil conspiracy claims against Defendant Luna in his individual capacity for monetary damages be **dismissed without prejudice**. *See Preece*, 2014 WL 6440406, at *1.

**B.    Claims Four and Five Against the City and Defendant Luna, and Claim Six Against the City**

Plaintiff's Claims Four and Five against Defendant Luna in his official capacity, Claims Four and Five against the City, and Claim Six against the City under § 1983 based on *respondeat superior* all appear to be closely entwined, and therefore the Court addresses them together. *Am. Compl.* [#30] ¶¶ 70-111.  At the outset, the Court notes that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  However, the Court appropriately disregards the legal labels applied by a pro se plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See  Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Thus, the Court construes Plaintiff's Claim Six as a *Monell* claim.  *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

Next, to the extent that Plaintiff asserts Claims Four and Five against Defendant Luna in his official capacity, these claims are, in reality, claims against the governmental entity for which he works, i.e., the City. *See Pietrowski v. Town of Dibble*, 134 F.3d 1006,

1009 (10th Cir.1998).  Because the Court has already found that Plaintiff has failed to allege violations under §§ 1983 and 1985(3) against Defendant Luna in his individual capacity, the Court must necessarily recommend that any claim against him in his official capacity, and thus against the City, be dismissed as well.  *See Meek v. Crews*, No. 13-cv-01064-MSK-KLM, 2014 WL 1056581, at *9 (D. Colo. Mar. 19, 2014); *see also Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001) (stating that a municipality cannot be liable in the absence of a constitutional violation by a municipal employee).

In addition, a plaintiff who seeks to impose liability on a municipality under § 1983 must identify a municipal policy or custom that caused injury to the plaintiff.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Plaintiff argues that "CSPD officers attend training seminars on the subject of avoiding § 1983 liability through 'careful' investigative techniques," and that the provision of such training allowing its officers to avoid liability "demonstrates extreme indifference to the rights of its citizens."  *Am. Compl.* [#30] ¶ 109; *Response* [#39] at 14.  In other words, Plaintiff illogically alleges that because City police officers receive training to help them comply with the law and avoid § 1983 violations, the City itself has committed a § 1983 violation.  There is no basis in the law for such an absurdity.  Plaintiff has failed to allege how deficient or nonexistent training may have led to any constitutional violation.  Thus, Plaintiff has failed to allege a plausible claim here.

Accordingly, the Court **recommends** that Plaintiff's Claims Four and Five against the City and against Defendant Luna in his official capacity be **dismissed with prejudice** and that Plaintiff's Claim Six against the City be **dismissed with prejudice**.  *See Preece*,

2014 WL 6440406, at *1.

## C.     Claims Four and Five Against Defendant Flanders

Plaintiff also asserts Claims Four and Five against Defendant Flanders. *Am. Compl.* [#30] ¶¶ 70-107.  Normally, the Court would first examine whether Defendant Flanders was acting under color of state law in connection with Claim Four, because § 1983 only "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted).  Thus, the only proper defendants in a § 1983 action are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172 (1961); *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1441, 1447 (10th Cir. 1995).  Four tests are used to determine whether a private individual may be found to be acting under color of state law and, therefore, may be liable pursuant to § 1983.  *See Gallagher*, 49 F.3d at 1447.  However, the Court need not examine any of those tests at this time, because even if, arguendo, Defendant Flanders could be found to be acting under color of state law, the Court finds that Plaintiff has not alleged a Fourth or Fourteenth Amendment claim against Defendant Flanders for the same reasons discussed in connection with Defendant Luna above.

Similarly, Plaintiff provides no additional facts with respect to Defendant Flanders that would allow the Court to reach a different conclusion on the civil conspiracy claim under § 1985(3). *See Griffin v. Breckenridge*, 403 U.S. 88, 99 (1971) (stating that while § 1983 requires that a defendant have acted under color of state law, § 1985(3) does not).

Accordingly, the Court **recommends** that Claims Four and Five against Defendant Flanders be **dismissed with prejudice**. *See Preece*, 2014 WL 6440406, at *1.

**D.     Claim Three: Malicious Prosecution Against Defendant Luna**

Defendant Luna also moves to dismiss the state-law malicious prosecution claim asserted against him.[7] *Am. Compl.* [#30] ¶¶ 60-69. This tort "addresses the situation where a person knowingly initiates baseless litigation." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010). To state a claim for malicious prosecution, Plaintiff must satisfy the following elements: "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007). Defendant Luna argues that Plaintiff has failed to alleged the third and fourth elements of this cause of action. *Motion* [#37] at 5-8.

The Court finds that Plaintiff has not sufficiently pled that there was no probable cause.[8] "The existence of probable cause is alone sufficient to relieve a defendant of a

---

[7] The Court notes that Plaintiff's statement of this claim focuses almost solely on the alleged acts and omissions of Defendant Flanders. *See Am. Compl.* [#30] ¶¶ 60-69.

[8] Plaintiff argues that "the lack of probable cause has already been determined as a matter of law by the Municipal Court that preside over the failed prosecution . . . ." *Response* [#39] at 8. However, "the issue of probable cause in [a] malicious prosecution proceeding is not identical to

charge of malicious prosecution." *B & K Distrib., Inc. v. Drake Bldg. Corp.*, 654 P.2d 324, 327 (Colo. App. 1982) (citation omitted). "Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested." *People v. Villiard*, 679 P.2d 593 (Colo. 1984).

Plaintiff makes two primary arguments here. First, he states that Defendant Luna should have mistrusted statements provided to him by Defendant Flanders. *See Response* [#39] at 8-9. Plaintiff alleges that Defendant Flanders told Defendant Luna that he had recently been released from federal prison and was on federal probation. *Am. Compl.* [#30] ¶¶ 29. However, contrary to Plaintiff's apparent belief, although proof of a felony conviction may be used to impeach a witness at trial under Federal Rule of Evidence 609, this does not mean that an officer is not permitted to believe statements made by a convicted felon. Plaintiff argues that Defendant Luna should have questioned various aspects of Defendant Flanders' story, such as:

> 1) [why] Flanders had waited 90 minutes to report the alleged crime; 2) why Flanders left the "scene of the crime" and where he was for the missing 90 minutes; 3) why Flanders had ambushed Plaintiff outside the post office when he exited after having already taken (according to the witnesses) several photographs of Plaintiff's vehicle; 4) why Flanders had been photographing Plaintiff's vehicle in the first place; 5) what had become of the missing photographs, and of particular importance, 6) why the (only) eight [footnote omitted] photographs Flanders offered as evidence were taken from

the probable cause issue in [a] preliminary hearing." *Schenck v. Minolta Office Sys., Inc.*, 802 P.2d 1131, 1134 (Colo. App. 1990). Rather, "[t]he sole focus at [a] preliminary hearing [is] whether the state [has] probable cause to believe plaintiff committed a crime." *Id.* In contrast, "in [a] malicious prosecution proceeding, the issue [is] whether the defendant[ ] had probable cause to believe plaintiff committed the crime." *Id.* at 1134-35. Thus, Plaintiff's contention is without merit.

three different sides of Plaintiff's vehicle, but ALL showed Plaintiff standing between Flanders and the vehicle.

*Response* [#39] at 8-9. Plaintiff has not alleged that the information underlying these inquiries was within Defendant Luna's possession when he was making his determination of whether there was probable cause to arrest Plaintiff. Beyond that, however, Plaintiff also alleges that Defendant Flanders told Defendant Luna that Plaintiff was attempting to assault and kill him. *Am. Compl.* [#30] ¶ 26. Defendant Flanders provided Defendant Luna with eight photographs to corroborate his statements and contact information for two eyewitnesses. *Id.* ¶¶ 27, 29. Further, Defendant Luna contacted the two eyewitnesses and attempted to contact Plaintiff by telephone, a call which he did not answer. *Id.* ¶¶ 29, 31. As the term implies, probable cause deals with probabilities, not with certainties. *People v. Washington*, 865 P.2d 145 (Colo.1994). Taken on the whole, the Court cannot find that Plaintiff has alleged that Defendant Flanders lacked probable cause to issue a summons or arrest Plaintiff.

Second, Plaintiff vaguely asserts that Defendant Luna provided falsely corroborating witness reports. *Id.* at 9. Plaintiff makes this assertion based on his belief that the witness statements Defendant Luna relied on contained discrepancies from the statements later provided by those same witnesses to Plaintiff's private investigator. *Response* [#39] at 9. However, except for conclusory statements, Plaintiff has failed to provide allegations demonstrating how Defendant Luna fabricated evidence or supposedly intimidated the eyewitnesses. Plaintiff merely speculates that Defendant Luna must have done so to support the conclusion which he wanted to reach, i.e., finding probable cause to allow the

arrest and prosecution of Plaintiff.  This failure to attribute any specific acts to Defendant Luna is lethal to Plaintiff's argument.  *See Carbajal v. Morrissey*, No. 12-cv-03231-REB-KLM, 2014 WL 1301532, at *21 (D. Colo. Mar. 31, 2014).

Thus, the Court finds that Plaintiff has failed to allege that Defendant Luna lacked probable cause to issue a summons or arrest Plaintiff.  Accordingly, the Court **recommends** that Claim Three against Defendant Luna be **dismissed with prejudice**. *See Preece*, 2014 WL 6440406, at *1.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#37] be **GRANTED**, that the City Defendant and Defendant Luna be **dismissed** from this action, and that Claims Four and Five against Defendant Flanders be **dismissed**, as outlined above.[9]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91

---

[9] Should this Recommendation be adopted in full by the District Judge, the only remaining claims will be Claims One, Two, and Three against Defendant Flanders.

F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

   Dated December 12, 2014, at Denver, Colorado.

   BY THE COURT:

   Kristen L.  Mix
   United States Magistrate Judge