IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03392-RBJ-KLM

PHILLIP DAVID HASKETT,

    Plaintiff,

v.

GARY WOODROW FLANDERS,

    Defendant.

## ORDER

This order addresses defendant's two summary judgment motions and his motion to compel. All are denied.

## BACKGROUND

This case arises from a feud that would not have spilled into the judicial system had a little more common sense prevailed on both sides. Animosity between Phillip Haskett and Gary Flanders dates back to 2006 when they became embroiled in a dispute concerning a tract of land in Colorado Springs. The present chapter began on November 1, 2012.

Haskett, who claims to be a resident of Texas, was in Colorado Springs that morning, and at about 9:45 a.m. he entered the downtown post office. Flanders, whom the plaintiff describes as a "convicted felon," happened to be nearby at the time and allegedly spotted Haskett's vehicle due to its Texas tags. Armed with a camera, Flanders took it upon himself to begin taking

1

multiple photographs of the vehicle, exterior and interior (through the windows). Flanders allegedly then hid behind a mail box awaiting Haskett's emergence from the post office.

Emerge he did, and Flanders leapt to the task of taking pictures of Haskett. That did not sit well with Haskett (he threatened to "rape and kill me," says Flanders), but Haskett managed to get into his vehicle and drive off. Flanders quickly approached a couple of bystanders who might have seen or heard some of the fracas. Some 90 minutes later Flanders reported an attempt on his life to a 911 operator.

Officer Dominick Luna was dispatched to meet Flanders and take his report. Haskett alleges that Officer Luna then interviewed the two purported witnesses and, after doing so, that Luna "entered" an arrest warrant for Plaintiff into CSPD's system." ECF No. 30 at ¶ 31. Officer Luna's initial effort to contact Haskett (at a cell phone number helpfully provided by Flanders) was unsuccessful, but a lawyer arranged for Haskett to pick up a "no arrest" summons the next day. Haskett was charged with harassment in municipal court, but the municipal prosecutor later dismissed the case for lack of evidence.

I suspect that both gentlemen might have been better served if the story had ended there. However, on December 16, 2013, a little over a year after the incident, Haskett, representing himself *pro se,* filed the present lawsuit, basing federal jurisdiction both on diversity of citizenship and on federal question jurisdiction. He joined as defendants not only Flanders but also Officer Luna and the Colorado Springs Police Department.

In his original Complaint, ECF No. 1, Haskett asserted six claims: (1) defamation against Flanders, alleging that Flanders had told a Mr. Carvill that Haskett had implicated Carvill in a murder plot, thereby causing Carvill to renege on an agreement to assign to Haskett a judgment

that Carvill had previously obtained against Flanders; (2) intentional interference with contractual relations, the Carvill deal again; (3) malicious prosecution against Flanders and Officer Luna, basically accusing Flanders of maliciously providing false information to Luna, and implying that Luna maliciously acted on it by causing Haskett to be prosecuted; (4, but misnumbered 3) a claim pursuant to 42 U.S.C. § 1983 against all defendants under the Fifth and Fourteenth Amendments to the U.S. Constitution, asserting among other things that Luna conducted a "sham" investigation as part of a local law enforcement conspiracy to rid Colorado Springs of Mr. Haskett; (5, misnumbered 4) a respondeat superior claim against the Colorado Springs Police Department; and (6, misnumbered 5) a racketeering claim under RICO against all defendants, again essentially grounded in the alleged conspiracy to get Haskett to leave town.

The "City Defendants" (Luna and the Police Department) moved to dismiss, but before the motion was briefed by parties or considered by the Court, it was mooted by Haskett's filing of an amended complaint. I will not dwell on that version because it was soon stricken by Magistrate Judge Mix for non-compliance with the rules regarding amendment to pleadings.

Haskett then sought and was granted leave to file an amended complaint. This version, essentially a Track Changes version of the original, named Flanders, Luna and now the City of Colorado Springs, but not the Colorado Springs Police Department, as defendants. ECF No. 30. The recitation of alleged facts was expanded, and the claims changed somewhat. The First and Second Claims, against Flanders concerning the Carvill matter, was not changed. The Third Claim, malicious prosecution against Flanders and Luna, was beefed up a bit but is otherwise largely the same as before. The Fourth Claim, still brought pursuant to § 1983, asserted violations of Haskett's rights under the Fourth (no longer the Fifth) and Fourteenth Amendments.

The Fifth Claim asserted that all defendants conspired to interfere with Haskett's civil rights to substantive due process and equal protection of the laws, contrary to 42 U.S.C. § 1985(3). Finally, the Sixth Claim sought respondeat superior liability against the City of Colorado Springs for the wrongful acts of Officer Luna. Mr. Haskett prays both for $10 million in damages and for a court order requiring that the Colorado Springs Police Department obtain court permission before contacting Haskett as part of any criminal investigation.

Flanders filed two motions to dismiss the amended complaint, both on procedural grounds: one for insufficient service of process, the other for a combination of lack of personal jurisdiction, insufficient process and insufficient service of process (or alternatively to strike immaterial, impertinent and scandalous material from the amended complaint). ECF Nos. 35 and 49. I referred both motions to Judge Mix. She denied the first one [ECF No. 35] and recommended that I deny the second one [ECF No. 60]. No objection was filed to the recommendation, and I accepted it and denied the motion to dismiss. ECF No. 63.

Meanwhile the City Defendants had filed another motion to dismiss. ECF No. 37. Again, I referred the motion to the magistrate judge. In a thoughtful and patient recommendation, Judge Mix addressed not only the claims against the City Defendants but also certain of the claims against Flanders. Regarding the latter, she noted that Mr. Haskett had been granted leave to proceed in this case *in forma pauperis* pursuant to 28 U.S.C. § 1915, and that courts retain the authority to dismiss such claims if they find that they fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

Judge Mix recommended that the motion to dismiss filed by the City Defendants be granted, and that all claims against Officer Luna and the City of Colorado Spring be dismissed.

She further recommended that Haskett' Fourth and Fifth Claims against Flanders be dismissed. ECF No. 66 at 22. No objections were filed, and this Court issued an order dismissing claims as recommended. ECF No. 68. That left three claims in the case, all state law claims: Claims One and Two, arising from the Carvill matter, and Claim Three, accusing Flanders of malicious prosecution.

Mr. Flanders, who like his adversary represents himself *pro se,* has filed two summary judgment motions, one addressed to Claim Three, and the other addressed to Claims One and Two. I turn to those next.

## STANDARD OF REVIEW

Courts may grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A plaintiff's burden in responding to a motion for summary judgment is relatively light. He must produce some evidence that establishes a genuine dispute of material fact, but the evidence and inferences that might reasonably be drawn from the evidence are viewed in the light most favorable to him at this stage. *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015).

## CONCLUSIONS

**A. Motion for Partial Summary Judgment: Claim Three [ECF No. 81].**

Under Colorado law, the elements of a claim of malicious prosecution arising from a prior criminal prosecution are (1) a criminal case was brought against the plaintiff, (2) it was brought as a result of statements made by the defendant, (3) the case ended in the plaintiff's favor, (4) the defendant's statement was made without probable cause, (5) the defendant's

statement was motivated by malice towards the plaintiff, and (6) as a result of the case, the plaintiff had damages. *See Montgomery Ward & Co. v. Pherson,* 272 P.2d 643, 645 (Colo. 1954); Colorado Jury Instructions – Civil § 17:1 (2015 Ed.).

Flanders argues that plaintiff has failed to allege that he lacked probable cause when he contacted the police, and in any event, that he did have probable cause. ECF No. 81 at 2. A statement to the police lacks probable cause for this purpose if it was made without a reasonable and good faith belief that the plaintiff was guilty of the offense with which he was charged. *See Konas v. Red Owl Stores, Inc.,* 404 P.2d 546, 547-48(Colo. 1965); Colorado Jury Instructions – Civil § 17:2 (2015 Ed.).

Addressing Flanders' pleading argument first, in Haskett's amended complaint he alleges that Flanders rushed from his hiding place to within two feet of Haskett with his camera held chest high, thrust the camera in Haskett's face, and circled Haskett's vehicle, all the while snapping pictures, and all of which caused Haskett to fear for his safety. ECF No. 30 at ¶20-22. He alleges that Flanders then falsely told the police that Haskett accused him of threating to rape him, to kill him, and to jam his boot up Flanders' behind. *Id.* at ¶¶26, 37.

Notwithstanding the vivid language of Flanders' alleged report to the police, Haskett was only charged with harassment, a municipal ordinance violation. *Id.,* Ex. C. Construing Haskett's *pro se* pleading liberally, *see Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991), I conclude that Haskett has pled sufficiently facts that, if believed, would support a jury determination that Haskett had a reasonable and good faith belief that Flanders was guilty of harassment.

Turning to Flanders' second argument, that the facts do not support Haskett's claim, he asserts that eight photographs and two witnesses corroborate the statements he made to the police

about Haskett's threats. ECF No. 81 at 2. However, he produces no photographs, affidavits, or other evidence to that effect. Moreover, he misses the point that it was the totality of his conduct that day, not just the statements he made to the police, that arguably support a reasonable and good faith belief that he was guilty of harassment.

Flanders also notes that the magistrate's recommendation states that plaintiff has not sufficiently pled the lack of probable cause. ECF No. 66 at 19, 21. The problem is, she was talking about Haskett's claim of malicious prosecution against Officer Luna, not his claim against Flanders. Notably, while the magistrate *sua sponte* recommended that Haskett's Fourth and Fifth Claims against Flanders be dismissed (which they were), she did not recommend that his Third Claim against Flanders be dismissed. ECF No. 66 at 22 n.9.

Haskett, in response to this motion, supplies no more evidence than did Flanders, displaying an equal lack of understanding of the responsibilities of both sides of a summary judgment motion. But in this instance it does not matter, because his burden arises only if and when the moving party makes some showing, based on materials in the record, that there is not a genuine dispute of material fact that requires a trial. Flanders has not met that initial burden. Because there does indeed appear to be a genuine issue of material fact in dispute concerning the probable cause issue, and because probable cause is the only subject of the motion for partial summary judgment, the motion must be denied.

**B. <u>Motion for Summary Judgment: First and Second Claims [ECF No. 84]</u>.**

In this motion Mr. Flanders challenges the claims arising from the Carvill matter. The gist of it is that GSSRP, Inc., not Carvill, had a judgment against Flanders, and therefore, that Carvill couldn't have reneged on an agreement to assign a judgment he did not possess. ECF No 84 at 3. As an alternative, Flanders argues that the Court should dismiss the case for lack of subject matter jurisdiction because the remaining claims do not meet the minimum amount in dispute necessary to support diversity of citizenship jurisdiction.

1. <u>The Judgment</u>.

In support of his motion Flanders attaches two documents:

- his letter of December 6, 2012 to Mr. Gordon Carvill, President, GSCRP, in which Flanders accuses Haskett of implicating Carvill in a murder plot on November 1, 2012 (i.e., during the fateful run-in at the post office), and admits to having included the information in a report Flanders made to the police about the matter (even though Flanders didn't believe Haskett), but nevertheless asks "on a more positive note" whether Carvill would be willing to receive and consider a proposal to resolve a $38,977.77 judgment that GSCRP has against him and another individual. ECF No. 84 at 9; and

- an Order and Judgment of the El Paso County District Court entering judgment in favor of GSCRP and against Flanders and others in a fraud case in the amount of $438,977.77 plus attorney's fees, essentially as a sanction against the defendants' willful failure to comply with the court's discovery orders. *Id.* at 10-15.

What Flanders did not do, however, is provide evidence establishing the amount of the judgment outstanding when this case was filed, evidence that Carvill was ever willing to assign it to him, evidence that Carvill then refused to assign it to him, evidence that Haskett had anything to do with Carvill's refusal to assign (if any), or even evidence that the judgment again him did or did not have any value. He appears to think that the fact that the judgment is in favor of the corporation is enough to guaranty dismissal of the claims, and perhaps for that reason he looked no further.

In response, Haskett asserts that GSCRP is a Colorado corporation created, owned (100%) and managed entirely by Carvill. ECF No. 91 at 3, 4. Flanders letter was written to Carvill in Carvill's capacity as the President of GSCCP. *Id.* at 4. He states that "Carvill has complete and unrestricted authority to resolve, settle or satisfy 'his' judgment against Flanders and his own insolvent corporation, GeoTech Corporation, assign the judgment to Plaintiff for nominal or even no consideration, or simply abandon it as uncollectible." *Id.* Continuing, Haskett states that Carvill is an 87-year old retired CPA who battled Flanders for three years over Flanders' fraudulent appropriation of $280,000, and that until Flanders accused Haskett of implicating Carvill in a murder plot, Carvill was going to assign the balance of the judgment to Haskett. *Id.* at 5. He suggests that Flanders' argument that the judgment isn't actually in Carvill's name is nit-picking of no consequence because Rule 8 of the Federal Rules of Civil Procedure does not require a plaintiff to state every possible detail. *Id.* at 3.

Of course, like Flanders, Haskett produces essentially no evidence to back up his assertions. Like Flanders, he presents no evidence about Carvill, the corporation, the judgment,

the alleged agreement to assign it to him, the amount still outstanding, or anything else of much use to a court in deciding a summary judgment motion.

I am not hung up on the fact that the judgment was in the name of GSCRP. One deals with a corporation through its officers and directors, and if GSCRP is what Haskett says it is, then it not at all surprising that any agreement for an assignment of the judgment would be negotiated between Carvill and the prospective assignee. It obviously comes as no surprise to Flanders that the judgment was in favor of the corporation, and there is no suggestion that an amendment of the pleading to conform to the evidence would be in any unfair way prejudicial to him. This argument is more of a "gotsha" than something of meaningful substance.

I do wonder, though, if either of the combatants actually has Mr. Carvill lined up to testify. I wonder if either of them has any real idea of what his testimony would be. If I had to guess, it would be that Mr. Carvill might want to have nothing to do with either of them. Is there an outstanding amount on the judgment? Was there ever any prospect of, let alone an agreement for, an assignment of the judgment to Haskett? If so, why did he change his mind? Would Haskett actually have been able to collect anything against Flanders even if he had the judgment?

But, it is not for the Court to try the case on paper or to advocate for either party. The short answer is that Flanders has not demonstrated that there is no genuine dispute of material fact.

2. <u>Jurisdiction</u>.

At a gut level I can say that this case does not belong in federal court. If this case were to go to trial to a jury I suspect that the jurors might wonder how and why such a dispute ever got into federal court, and why their time was taken on such a matter. Honestly, if there were a

legitimate basis to find that there is no federal jurisdiction in this case I would do so in a heartbeat. But I don't think there is.

Once the federal constitutional and statutory claims were either dropped or dismissed, there no longer was a basis for federal question jurisdiction. So, Haskett's toehold is diversity of citizenship jurisdiction. This Court has subject matter jurisdiction if (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) the dispute is between citizens of different states. 28 U.S.C. § 1332(a)(1). Assuming that Haskett is, as he alleges, a citizen of Texas, and that Flanders is, as Haskett alleges, a citizen of Colorado, then the question boils down to the jurisdictional amount. Flanders understands that, and he argues that Haskett has "lost nothing as a result of Flanders' actions." ECF No. 84 at 6. Once again, just saying so isn't enough. On the other hand, Haskett's response that he seeks $10 million in damages, ECF No. 91 at 4, is not enough either.

Because federal courts are courts of limited jurisdiction, I have an independent duty to examine this Court's jurisdiction even if the parties had not raised jurisdiction as an issue. *Lovell v. State Farm Mut. Auto Ins. Co.,* 466 F.3d 893, 897 (10th Cir. 2006). I begin with the jurisdictional section of his Amended Complaint. Haskett alleges, in conclusory fashion, that "Jurisdiction and venue are proper in this Court pursuant to 28 USC . . . § 1332." ECF No. 30 at ¶10. That won't do it. If it did, then a plaintiff (or defendant removing a case) could always acquire a federal forum merely by alleging a big number, no matter how divorced from reality it might be.

As Haskett and Flanders both recognize, the easiest claim to quantify is the claim concerning the Carvill judgment. Haskett alleges that as of November 10, 2010 the judgment

11

had a remaining balance of $80,691.83, which was accruing interest at 8.0% per annum. ECF No. 30 at ¶48. He alleges that by November 1, 2012, the date of the incident, the balance of the judgment had increased in value to $93,461.04. *Id.* Therefore, he alleges, because Flanders' defamatory statements had caused him to lose his opportunity to acquire the judgment, he has suffered damages in excess of $75,000. *Id.* at ¶53.

Flanders responds that his letter to Carvill, discussed above, shows that the balance of the judgment as at December 6, 2012 was only $38,977.77. No, it does not. The letter shows only that Flanders, one of the defendants and judgment debtors in a fraud case where the defendants failed to comply with court orders, wrote a letter to Carvill/GSCCP, the judgment creditor, stating that the balance on the judgment was $38,977.77. Neither party has ever come forward with any credible evidence one way or the other.

As for Haskett's malicious prosecution claim, he alleges that he "suffered damages defending himself including monetary expense such as attorney fees, court costs and travel expenses; loss of employment, mental pain and suffering, anxiety and fear of imprisonment, public humiliation and disgrace, embarrassment, indignity, and damage to his reputation." ECF No. 30 at ¶68. Neither party has provided any evidence concerning the attorney's fees, costs or travel expenses. The rest are non-economic damages to be determined by a jury.

Together, he has the allegation that he lost a judgment worth something in the range of $90,000 plus some out of pocket costs arising from the harassment charge and non-economic damages. Do I think Haskett is likely to obtain a judgment for anything approaching $75,000? No. I think it is more likely that he will received little if anything in the way of damages in this case. But, speculation on Haskett's prospects is not my role.

"When a case is originally brought in federal court, the plaintiff's claimed amount is presumed to support diversity jurisdiction." *Martin v. Franklin Capitol Corp.,* 251 F.3d 1284, 1289 (10th Cir. 2001). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938). More recently, in the context of removal under 28 U.S.C. § 1446(a), the Supreme Court held that the notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014). The bottom line is that when a court assesses whether a plaintiff has sufficiently alleged the jurisdictional amount, the bar is fairly low.

I have considered issuing an order requiring Haskett to show cause as to why his case should not be dismissed for failure to show that the matter in controversy exceeds the sum of $75,000. He would have to put his money where his mouth is, so to speak, with respect to the Carvill matter, and I would not be surprised if he couldn't do it. But, setting aside all the hyperbole and anger in his amended complaint, I can't say that his malicious prosecution claim is obviously without merit, any more than Judge Mix did. And when it comes down to non-economic damages of the kind he asserts, it is quite difficult to determine "to a legal certainty" that the claim is for less than the jurisdictional amount. Again, I personally doubt that he'll receive much, if anything, in the way of damages in this case. If my guess proves out, then Haskett faces the possibility of paying Flanders' costs even if he is adjudged to be entitled to something. *See* 28 U.S.C. § 1332(b).

In sum, while I strongly encourage both parties to rethink their positions on this case in the days ahead and to consider an out-of-court resolution rather than attempting to try a jury case, I do not find that Flanders has established that there is no genuine dispute of facts, nor do I find that Haskett has not sufficiently alleged federal jurisdiction at this point.

C. **Motion to Compel Discovery**

Mr. Flanders moves to compel Mr. Haskett to complete his initial disclosures and for an extension of the discovery deadline so that Mr. Haskett can answer requests for production, interrogatories and requests for admissions. The motion is denied. The discovery cutoff was May 22, 2015. ECF No. 74 at 2. The parties either had to complete pre-trial discovery by that date or request an extension for good cause by that date. Your motion, filed July 14, 2015, is untimely.

Both parties should understand, however, that the Court takes the disclosure requirements of Rule 26(a) seriously. A party's failure to comply with the required disclosure of witnesses or exhibits will likely result in preclusion of the witness or exhibit.

**ORDER**

ECF Nos. 81, 84 and 105 are denied.

DATED this 20th day of July, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge